UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CV 3080

-----------------------------------------------------------x

GREGORY KAHN,

                Plaintiff,

-against-

THOMASLLOYD GROUP PLC,

                Defendant.

-----------------------------------------------------------x

Case No.

**COMPLAINT**

RECEIVED APR 12 2010 U.S.D.C. S.D.N.Y. CASHIERS

       Plaintiff Gregory Kahn ("Kahn"), as and for his complaint against defendant ThomasLloyd Group PLC ("TLG"), alleges as follows:

*The Parties*

    1.    Plaintiff Kahn is an individual residing at 125 Saw Mill Road, Stamford, Connecticut.

    2.    Defendant TLG is company organized and existing under the laws of England, with its registered office at ThomasLloyd Group plc, 3 More London Riverside, London SE1 2AQ, United Kingdom, Registered no. 05034664.

*Jurisdiction and Venue*

    3.    Jurisdiction exists pursuant to 28 U.S.C. §1332(a) in that this matter concerns a dispute between citizens of a state and a foreign state. The amount in controversy exceeds $75,000, exclusive of interest and costs.

    4.    Venue is appropriate in this district pursuant to 28 U.S.C. §1391(a) in that this district is specified in a contractual choice of venue provision agreed to between the parties.

*Background*

5.  Pursuant to the terms of a written employment agreement between the parties dated as of August 15, 2007 (the "Service Agreement"), upon Kahn's notice of termination for "Good Reason", TLG became contractually obligated to pay Kahn specified sums as set forth in the Service Agreement. In June 2009, following TLG's repeated failure to timely pay Kahn his salary, Kahn gave written notice of his termination for "Good Reason," which triggered his contractual right to severance payable by TLG.

6.  After several failed attempts to negotiate a mutually acceptable resolution of the considerable financial obligations owed to Kahn by TLG, at the advice of UK counsel, Kahn commenced involuntary insolvency proceedings against TLG in England, TLG's place of incorporation. In response to Kahn having filed an insolvency petition seeking to wind up the company, TLG, after initially falsely accusing Kahn, for the first time ever, of having engaged in wrongful conduct, then sought to negotiate a settlement with him, which included Kahn receiving substantial sums from TLG, TLG posting collateral securing such obligations, Kahn rendering specified services for TLG, and Kahn withdrawing the involuntary insolvency petition. When those efforts proved unsuccessful (because TLG reneged on the deal), Kahn moved forward with the insolvency proceedings.

7.  On the eve of the hearing on the insolvency petition, TLG filed an action in New York State Supreme Court, and argued to the insolvency court in England that, based on Kahn's alleged wrongful conduct, TLG was owed sums by Kahn in excess of the amount Kahn was owed under the Service Agreement. TLG further argued that, as a result, Kahn was not a creditor of TLG and thus lacked the right to petition for TLG's insolvency.

8. Faced with the New York complaint, the English insolvency court was unable to determine the likely result of the New York proceedings and dismissed the petition. In an unusual twist, however, when TLG as the prevailing party sought recovery of its attorney's fees and expenses, which are typically awarded under English law, the insolvency court <u>denied</u> TLG any of its fees or costs. In so doing, the insolvency court noted that had the New York proceedings not been commenced, it may well have granted Kahn's petition based upon the evidence before the insolvency court.

9. It is clear that the New York proceeding was commenced by TLG in an effort to fend-off the English insolvency proceedings and, to delay paying Kahn the substantial sums he is unquestionably owed by TLG under the unambiguous terms of the Service Agreement. Moreover, the baseless yet inflammatory allegations contained in the Complaint were "payback" for Kahn having had the temerity to file an involuntary insolvency petition against TLG.

10. The lack of merit to TLG's complaint was evidenced by, among other things, the complete absence of any actual damages having been asserted by TLG. Instead, the complaint was padded with language such as, *"potential"* claims, *"likely"* violations, *"contingent liability,"* and other such hypothetical and speculative accusations, all of which revealed a paucity of evidence or damages. Indeed, so outrageous were some of TLG's claims that they were tantamount to a fraud on the court.

11. Kahn removed TLG's state court action to the United States District Court for the Southern District of New York, and sent TLG's legal counsel a letter setting forth the reasons why the allegations in TLG's complaint were knowingly false and otherwise subject to dismissal and sanctions. Upon the threat of sanctions pursuant to Fed. R. Civ. P. 11 and, on the eve of

3

Kahn moving to dismiss TLG's complaint and filing an answer with counterclaims, TLG withdrew its complaint, without prejudice.

12. The action herein seeks damages based on TLG's breach of the Service Agreement. In addition, the claims below include recovery of Kahns' attorney's fees, costs, and disbursements, as permitted by English law, as well as under the terms of the Service Agreement.

### FIRST CLAIM AGAINST THOMASLLOYD GROUP, PLC
(Breach of Section 10.3 of the Service Agreement)

13. Kahn repeats and realleges the allegations contained in paragraphs 1 – 12 above, as though fully set forth herein.

14. Kahn entered into a written contract with TLG, dated as of August 15, 2007 (the "Service Agreement" or "Agreement") pursuant to which Kahn would serve as Group General Counsel. A fully-executed copy of the Service Agreement is annexed hereto as **Exhibit 1**. The Service Agreement is expressly governed by the laws of England.

15. As specifically required under the Service Agreement, Kahn rendered legal services on a day-to-day basis to TLG and other of its subsidiaries.

16. Kahn was responsible for the legal functions of TLG. TLG's Corporate Center was run by Michael Sieg ("Sieg") out of Europe. The corporate functions such as Finance, IT, Risk, Operations/Communications, Human Resources, and the asset management and investment banking businesses were all run out of Europe by Sieg and Tony Coveney ("Coveney"), who also serve as the sole members of the Board of Directors of TLG.

17. In or around February 2009, Kahn was approached by Coveney, who requested that Kahn voluntarily terminate the Service Agreement and move to a more "standardized" form of employment contract. Coveney informed Kahn that the main reason for such request was that

the financial terms of the Service Agreement were "no longer appropriate" for a company the size of TLG. Coveney initially tried to persuade Kahn to simply tear up the Service Agreement, which Kahn refused to do without receiving some form of reasonable consideration in exchange.

18.    At that time, Coveney also offered Kahn a non-legal investment banking position with TLG with a significantly reduced annual salary and little in the form of protective provisions against termination.

19.    In or around May 2009, Kahn informed Coveney that he was unwilling to simply terminate the Service Agreement and its various economic rights and protective provisions against termination without a reasonable exchange of consideration. Kahn also declined the non-legal investment banking position.

20.    By May 2009, TLG and its subsidiaries were experiencing severe financial difficulties and U.S. payroll obligations had not been met on time since December 2008. The failure to timely pay Kahn his salary constituted a breach of the Service Agreement. In an email sent on May 7, 2009, Coveney informed the U.S. staff that payroll would be late once again for the third month in a row and acknowledged that he was uncertain when it would be paid.

21.    On June 3, 2009, after repeatedly expressing his concerns *via* email and phone calls to Coveney and Sieg regarding late payroll, Kahn e-mailed both Coveney and Sieg that he was no longer willing to work under circumstances where his contractual rights were continually breached, without any real financial transparency, and not knowing when he would be paid and how much he would receive. In his email, Kahn expressly reserved his right to terminate his employment for "Good Reason" under Section 10.2(d)(ii) of the Service Agreement. Kahn also expressed a willingness to reach a settlement of the obligations due to him under the Service Agreement in the best interests of the parties.

22.     During the first week of June 2009, Kahn, Sieg and Coveney conducted discussions and meetings to attempt to reach a final and documented settlement of the obligations due to Kahn under the Service Agreement. Despite such efforts, no final settlement was able to be executed by the parties.

Kahn's Termination of the Service Agreement for "Good Reason"

23.     Pursuant to Section 10.2(d)(ii) of the Service Agreement, a failure to timely pay Kahn's base salary for three consecutive months and a failure to cure within three business days of each such payment date, constitutes "Good Reason" for Kahn to terminate the Service Agreement. Upon termination for Good Reason, certain payments set out in Section 10.3 of the Service Agreement became due to Kahn.

24.     Kahn was not paid his base salary on time for the months of February, March, April and May 2009. Such failure to pay has never been denied by TLG and was, in fact, confirmed in writing by TLG.

25.     Accordingly, on June 10, 2009, Kahn provided formal written notice of termination of the Service Agreement, pursuant to Section 10.2 thereof, which notice detailed the financial obligations due to Kahn pursuant to Section 10.3 of the Service Agreement. Kahn's notice of termination also repeated his willingness to reach a mutually acceptable settlement in the best interests of the parties.

26.     Although duly demanded, Kahn has not been paid any of the amounts due to him under Section 10.3 of the Service Agreement, or any amounts thereof.

Amounts due Kahn under Section 10.3 of the Service Agreement

27.     Pursuant to Section 10.3 of the Service Agreement, Kahn is entitled to payment in the amount of the sum of €862,000 plus USD $22,840, which is comprised of the following:

- €162,000 minimum guaranteed bonus for 2009;

- €9,000 for pro-rated June 2009 base salary (€900 per day x 10 days);

- €27,000 in accrued and unused paid holiday (4 weeks of the 6 paid weeks provided for each rolling 12 month period);

- USD $22,840 for costs of medical/dental benefits for Kahn's family for September 2009 through June 2010 (USD $2,284 per month) plus life insurance premium costs of up to €5,000 for the period September 2009-September 2010;

- €11,700 for the costs of monthly car payments for June 2009 through June 2010 (€900 per month); and

- €648,000; which is €54,000 per month for the months of June 2009 through June 2010. This €54,000 figure is arrived at by adding the sums described in Sections 10.3(f)(i)-(ii) of the Service Agreement (a full year base salary of €324,000 and minimum guaranteed bonus of €162,000 plus one additional year's minimum guaranteed bonus of €162,000, totalling €648,000, and dividing such €648,000 total amount by 12 monthly instalments.

28.     Although duly demanded, TLG has failed and refused to pay Kahn any of the amounts due and owing to him under Section 10.3 of the Service Agreement. Such failure to pay constitutes a breach of the Service Agreement by TLG.

29.     As a result of the foregoing, Kahn has been damaged in an amount not less than the sum of €862,000 plus USD $22,840, plus costs and disbursements, attorney's fees, and interest, as permitted by applicable law.

## SECOND CLAIM AGAINST THOMASLLOYD GROUP, PLC
*(Attorney's Fees and Costs)*

30.     Kahn repeats and realleges the allegations contained in paragraphs 1 – 29 above, as though fully set forth herein.

31. Pursuant to English law, a prevailing party to litigation is entitled to recover his attorney's fees, costs and disbursements.

32. To the extent Kahn prevails in this matter on his claims he is entitled to recoup from TLG his attorney's fees and disbursements, in an amount to be determined.

### THIRD CLAIM AGAINST THOMASLLOYD GROUP, PLC
*(Breach of Section 6.4 of the Service Agreement)*

33. Kahn repeats and realleges the allegations contained in paragraphs 1 - 32 above, as though fully set forth herein.

34. As set forth in the Section 6.4 of Service Agreement, Kahn is entitled to be reimbursed and indemnified for certain "Expenses" as that term is defined in Section 6.4 of the Agreement, in connection with certain "Proceedings" as that term is defined in Section 6.4 of the Agreement.

35. In accordance with Section 6.4 of the Agreement, Kahn made written demand upon TLG for payment of certain Expenses incurred by him in connection with the action previously brought by TLG in New York against Kahn, in the amount of USD$2,812.28, plus an additional amount of £11,385.89, (which amounts do not reflect all Expenses incurred by Kahn in connection with the action brought by TLG against Kahn), to be remitted to him within fifteen (15) days of receipt of written demand, as required by Section 6.4 of the Agreement.

36. Notwithstanding Kahn's written demand, TLG has failed and refused to remit any moneys to Kahn as required pursuant to Section 6.4 of the Service Agreement.

37. Such failure on the part of TLG constitutes a breach of the Service Agreement, as a result of which Kahn has suffered damages in the amount of not less than USD$2,812.28, plus an additional amount of £11,385.89.

38.     In addition to the above sums, Kahn hereby demands from TLG indemnification and reimbursement of all Expenses incurred by him in connection with the action previously brought by TLG against Kahn, which TLG has now voluntarily dismissed, plus costs and disbursements, attorney's fees, and interest.

### Intent To Rely On English Law

Kahn intends to rely on the law of England with respect to his claims set forth herein.

**WHEREFORE**, Gregory Kahn respectfully requests the following relief against TLG:

(a) that he be awarded judgment against TLG on his First Claim in an amount not less than the sum of €862,000 plus USD $22,840, plus interest thereon, costs and disbursements, as well as his reasonable attorney's fees; and

(b) that he be awarded judgment against TLG on his Second Claim for his attorney's fees, costs and disbursements in an amount to be determined; and

(c) that he be awarded judgment against TLG on his Third Claim in an amount not less than USD$2,812.28, plus an additional amount of £11,385.89 with interest thereon, costs and disbursements, as well as his additional reasonable attorney's fee, costs and expenses incurred in connection with TLG's now dismissed action; and

(d) such other and further relief as deemed appropriate by the Court.

Dated:  New York, New York
        April 12, 2010

                                        **KRAVET & VOGEL, LLP**
                                        *Attorneys for Plaintiff Gregory Kahn*

                                        By: _____
                                              Donald J. Kravet (DK-2772)

                                        1040 Avenue of the Americas, Suite 1101
                                        New York, New York 10018
                                        (212) 997-7634